# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# CENTRAL DIVISION

| | |
|---|---|
| GEORGE W. BROWN,<br><br>        Plaintiff,<br>vs.<br><br>LOWE'S HIW, INC.,<br><br>        Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:13CV72 DAK |

This matter is before the court on Defendant Lowe's HIW, Inc.'s ("Lowe's") Motion for Summary Judgment. A hearing on the motion was held on June 19, 2014. At the hearing, Lowe's was represented by Robert O. Rice and Emily S. Loeffler. Plaintiff George W. Brown III ("Brown") was represented by David Holdsworth. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

Brown is an African-American man who worked at Lowe's from August 2006 until March 2010, when his employment was terminated. He claims that Lowe's subjected him to (1) discrimination based on his race; (2) retaliation, and (3) a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964. In the instant motion, Lowe's argues that it is entitled to summary judgment on each of the claims. First, Lowe's claims, Brown failed to timely file a charge of discrimination in connection with the heart of his claim– that he was

allegedly terminated for discriminatory and retaliatory reasons. Consequently, according to Lowe's, Brown failed to exhaust his administrative remedies and thus, under controlling Tenth Circuit law, this court has no jurisdiction to consider his claims for termination based on racial discrimination or retaliation.[1] To the extent Brown has asserted discrimination and/or retaliation claims based on adverse actions other than his termination, Lowe's also argues that Brown has not raised a genuine issue of material fact that would preclude summary judgment on these claims.

In addition, Lowe's contends that Brown cannot establish a supportable claim for a hostile work environment because Brown was subject only to a single, isolated instance of racial conduct. Lower's argues that this isolated incident does not support a claim for an actionable hostile work environment. Even if it did, Lowe's maintains that it is not liable for such conduct because it promptly stopped the alleged harassment, thereby insulating itself from liability under controlling Tenth Circuit law. For these reasons, Lowe's asks the court to grant summary judgment on all of Brown's claims in their entirety, dismissing his claims with prejudice.

## II.  UNDISPUTED FACTS

On or about August 21, 2006, Lowe's Store Manager, Matt Midgley ("Midgley") hired Brown as a Sales Associate at a store now located in Sandy, Utah. After several pay raises and an interim promotion, Midgley promoted Brown to Department Manager. When he was hired, Brown signed a form acknowledging his receipt and understanding of Lowe's Employee Orientation Guide, containing Lowe's Anti-Harassment Policy. Under the Anti-Harassment

---

[1] Lowe's also contends that even if the court had jurisdiction to consider these claims, they would fail for a variety of other reasons. Because the court finds that it does not have jurisdiction over Brown's claims for discriminatory or retaliatory termination, the court will only briefly address below Lowe's alternative arguments.

Policy, "[a]ny employee who believes she or he has been subject to discrimination or harassment . . . may report alleged discrimination or harassment to their Store Manager, Store Human Resources Manager, the Area Human Resources Manager or the Regional Human Resources Director."

During his employment with Lowe's, Brown believed that he was the target of a social "clique" organized around "a group of long-term employees" that did not include Brown, a newcomer. It was "the old guard vs. the new guard," according to Brown. By fall 2009, Brown's conflicts with members of the clique became progressively worse, according to Brown, with frequent clashes between Brown and his colleagues. Still, Midgley believed that Brown had the skills to be a valued employee and thus tried to informally advise Brown about improving his relations with fellow employees. Midgley met privately with Brown to discuss how Brown could best develop skills to "get to the next level."[2]

Brown's conflicts with co-employees continued, however, culminating in a December 10, 2009 imbroglio between Brown and several cashiers. The conflict arose when the cashiers asked Brown to assist in retrieving returned merchandise and Brown's inability to "spare" staff to retrieve the items. Brown, however, claims that the three head cashiers were merely chatting, and he asked why they couldn't take the merchandise back to the department. In any event, tempers flared, and the cashiers became upset. Several of the cashiers complained to Lowe's

---

[2] Mr. Brown purportedly disputes this fact, claiming that Lowe's consistently turned him down for various promotions while selecting employees with fewer qualifications. Mr. Brown, however, has offered no evidence to support this proposition, other than his own vague, non-specific and conclusory testimony. The court therefore finds that he has not raised a genuine issue of material fact. *See Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007)

Human Resources Department about Brown's swearing and being abusive. Brown, however, claims that hours later, in the break room, one of the cashiers, Debbie Williams ("Williams") unleashed a strong of profanities toward him. The complaints from the cashiers prompted the Lowe's Human Resources Department to conduct an investigation.

Brown denied using profanity and yelling. According to Brown, "I may have become agitated because I was busy, but I did not raise my voice." Brown testified that his voice was merely "elevated." On January 8, 2010, after conducting an extensive investigation, Lowe's concluded that Brown and Williams had been abusive to each other, issuing them both Final Notices for violating Lowe's company policy against "verbal abuse" of employees. The January 2010 Final Notices for Williams and Brown were the first Final Notices for both employees.[3] Mr. Brown's and Ms. Williams' Final Notices were for conduct that constituted Class A violations under Lowe's policy.

On December 15, 2009, during the Human Resources Department's investigation of the

---

[3] Brown argues that Lowe's skipped over its regular policy mandating progressive discipline and that he should not have received a "Final Notice" under Lowe's policy. He does not, however, support this assertion with any evidence beyond his own understanding.. He does not purport to have any personal knowledge about Lowe's progressive discipline policy, and the actual policy language does not support his position. Similarly, he claims that Williams was already on final warning for cash shortages and that Lowe's did not terminate her employment when it issued her this "second" notice. Again, however, Brown does not support this assertion with any evidence beyond his own testimony. He does not establish, however, that he has any personal knowledge of Williams' discipline history. His speculation does not create a disputed fact. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452, F.3d 1193, 1200 (10th Cir. 2006). In contrast, Lowe's has demonstrated through the Arnold Affidavit that Arnold was a Human Resources manager at the store in question, that Arnold was in charge of the store's human resources program, that she investigated the incident involving Brown and Williams and, critically, that she reviewed both Brown's and Williams' personnel file and found that neither one of them had a prior Final Notice. *See* Docket No. 21, Reply Mem. at 6 n.2.

complaints about Brown, Brown for the first time reported to Human Resources that another employee, Kent Dawes ("Dawes"), had used the "N" word in his presence. Specifically, Brown reported that on December 1, 2009, Dawes was "joking around" with Brown when Dawes told a story regarding Dawes' African-American friend who periodically used the "N" word. Midgley, who was also present during the conversation, said he had African-American friends who used the same term.[4]

In response to Brown's complaint about Dawes, Povie Arnold, the director of Human Resources at that Lowe's store, conducted an investigation into the incident. Lowe's later reprimanded Dawes, issued a written warning and threatened to terminate him. After Lowe's investigated Brown's complaint and threatened Dawes with termination, Brown does not claim that he was subject to any further racial conduct by Dawes–or anyone else.

When Brown came to work on about March 12, 2010, several employees believed that Brown was acting strangely and that he smelled of alcohol.[5] Zone Manager Jesse Cowley ("Cowley") responded to a report that Brown smelled of alcohol. Cowley observed that Brown

---

[4] Brown's deposition testimony regarding this conversation is somewhat disjointed. First, he stated that he did not feel as though Midgley and Dawes were calling him the "N" word, but the content of their conversation implied that this is how they viewed him. *See* Docket No. 18, Mem. in Opp'n at 7 (citing Brown Depo. at 108, 155). Thus, Brown understood the racial epithets to be directed at him. *Id*. (citing Brown Depo. at 136:21-137, 155). Brown also asserts that he "understood these comments to explain why his local management had not offered him training opportunities and why his local management had allowed subordinate employees to determine his work schedule." *Id*..(citing Brown Depo. at 155, 158, 160, 161). In any event, Brown has not suggested that the "N" word was used on any other occasion during his employment at Lowe's.

[5] Brown, however, claims that on March 11, 2010, he had assisted a friend move and injured his back. He claims that he was in serious pain when he came to work on March 12, 2010, but he denies that he had used alcohol.

smelled of alcohol, was slurring his speech, and was having difficulty walking. Cowley then reported Brown's appearance to Midgley. Midgley himself then personally observed Brown. In an internal report, Midgley wrote that "I observed George out in front of the store wandering around almost like he didn't know where or what he was doing" and that he "appeared confused and or not right." Midgley also reviewed witness statements and emails from witnesses who had observed that Brown smelled of alcohol, was acting erratically and that Brown appeared to be not in a condition to work. Midgley concluded that Brown was unfit for duty, in violation of Lowe's Fitness for Duty policy, which required that Brown report to work "in a condition to work." Midgley met with Brown and told him "I don't think you're fit to work" and that therefore, he was sending Brown home. Brown refused Midgley's offer to arrange for a ride home.[6]

At the time of the March 12, 2010, incident, Brown was already on Final Notice because of his Class A violation arising out of Brown's conflict with Williams in December 2009. When a Lowe's employee is already the subject of a Final Notice, another policy violation "will normally result in termination." Accordingly, effective March 20, 2010, Midgley terminated Brown's employment because of the March 12, 2010, incident in which Brown reported to work not in a condition to work, in violation of Lowe's Fitness for Duty policy. At the time, Midgley decided to release Brown, he had no knowledge that Brown had filed a Charge of Discrimination with the UALD just two days earlier--on March 18, 2010–alleging race discrimination and retaliation in connection with the Final Notice issued to Williams and Brown (the "2010

---

[6] Brown has not disputed that Lowe's policy does not allow alcohol testing for employees found unfit for duty unless the employees are drivers. Therefore, Brown, who was not a driver, was not tested for alcohol.

Charge").

Nearly a year later, on March 15, 2011, Brown filed another Charge of Discrimination (the "2011 Charge") for the first time stating that he had been unlawfully terminated on March 20, 2010. The UALD subsequently dismissed Brown's claims. Brown appealed the dismissal to an Administrative Law Judge ("ALJ"). On summary judgment, the ALJ dismissed Brown's discrimination, retaliation, and hostile work environment claims on substantive grounds. The ALJ then issued an Amendment to Order Granting Motion for Summary Judgment and specifically held that, in addition to the substantive failures in Brown's claim, Brown's claim was jurisdictionally barred as untimely:

> It is clear that termination is a discrete act or employment practice and a Charging Party must meet the 180[-day] statutory deadline, unrelated to other alleged acts of discrimination. It then follows that because the Petitioner's allegation of discriminatory termination was filed far more than 180 days after his termination, it must be dismissed as untimely.

Brown then filed the instant action under Title VII of the Civil Rights Act of 1964, alleging that (1) he was subject to unlawful discrimination when he was terminated, (2) he was subject to unlawful retaliation when he was terminated, and (3) he was subject to a hostile work environment.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion of summary judgment, the court views "all facts [and evidence] in the light most favorable to the party opposing summary judgment." *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012) (quoting *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th

Cir. 2008)). The movant must prove that no genuine issue of material fact exists for trial. *See* Fed. R. Civ. P. 56(a); *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). Accordingly, to survive summary judgment, "the nonmoving party must come forward with specific facts showing there is a genuine issue for trial." *Smart*, 678 F.3d at 858 (quoting *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)). The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Champagne Metals v.. Ken–Mac Metals, Inc.*, 458 F.3d 1073, 1084 (10th Cir.2006). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1179 (10th Cir.2007) (internal quotation marks and citation omitted).

## IV. DISCUSSION

**I.     Does the Court Have Jurisdiction Over Mr. Brown's Claim of Discriminatory or Retaliatory Discharge?**

Lowe's contends that Mr. Brown failed to timely file a charge of discrimination in connection with the heart of his claim–that he was allegedly terminated for discriminatory and retaliatory reasons. Consequently, Lowe's argues, Mr. Brown failed to exhaust his administrative remedies regarding these termination claims, and this court therefore has no jurisdiction to consider the claims.

A plaintiff must administratively exhaust each discrete discriminatory or retaliatory act by filing a charge of discrimination within 180 days of each discrete act of discrimination. *See National Railroad Passenger Corp. v. Morgan*, 451 U.S. 101, 109, 113 (2002). "In the Tenth

Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit" in any Title VII claim. *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1183 (10th Cir. 2007). "Each discrete discriminatory act starts a new clock for filing charges challenging that act, and a claimant must file a charge of discrimination within the appropriate limitations period as to each such discrete act of discrimination that has occurred." *Morgan*, 451 U.S. at 113. The court's inquiry "is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts alleged in the administrative charge. In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that 'each discrete incident' of alleged discrimination or retaliation constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Jones*, 502 F.3d at 1186 (internal quotations omitted) (citing *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir.2003) and *Morgan*, 536 U.S. at 114)). Discrete acts include acts such as "termination" of employment. *Morgan*, 536 U.S. at 114. Thus, as the Tenth Circuit recognized in *Jones*, "any adverse employment actions occurring after [the plaintiff] submitted his administrative charge . . . would not fall within the scope of his charge." *Id*. at 1186; *see also Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003).

In this case, it is undisputed that Mr. Brown filed his 2010 Charge on March 18, 2010 – two days before his employment was terminated. It is also undisputed that his 2010 Charge did not allege that he had been subject to retaliatory or wrongful termination.[7] He did not amend his Charge until March 15, 2011--360 days after his termination, which is 180 days too late. In

---

[7] *See* Docket No. 18, Pl.'s Mem. in Opp'n at p. 15 of 58; 2010 Charge, attached as Exhibit 18 to Docket No. 18.

addition, Mr. Brown has not alleged in his Complaint that he is entitled to equitable tolling, and, moreover, he also has not or offered any evidence to support his argument that the equitable tolling doctrine should be applied in this situation.[8] Thus, Mr. Brown failed to timely exhaust his administrative remedies regarding his claims of discriminatory and/or retaliatory termination, and they are therefore jurisdictionally barred and must be dismissed.[9]

## II. Has Brown Created a Genuine Issue of Material Fact As to Any Claim for Discrimination or Retaliation Claim Stemming From His 2010 Charge?

Brown appears to assert claims for discrimination and retaliation separate and apart from his claim of discriminatory and retaliatory termination. In his Memorandum in Opposition to Lowe's Motion for Summary Judgment, he discusses generally that Lowe's discriminated against

---

[8] Equitable tolling will not apply "unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994) (internal quotation marks omitted); *Benton v. Town of S. Fork & Police Dep't, No. 13-1179*, 2014 WL 67867, at *17 (10th Cir. Jan. 9, 2014)

[9] Lowe's also argues that, even if this court had jurisdiction over Mr. Brown's claims for discriminatory and/or retaliatory termination, Mr. Brown has not set forth a disputed fact that would defeat summary judgment on either of these claims. The court agrees. Specifically, Lowe's has argued that it terminated Mr. Brown's employment for legitimate, nondiscriminatory reasons when it concluded that he came to work on March 12, 2010 not in a condition to work (his supervisor believed he was drunk) in violation of Lowe's Fitness for Duty policy. Mr. Brown has not created a disputed fact suggesting that this reason is pretext. *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004). He has no evidence that the store manager, a long-time supporter of Brown, lacked an honestly held belief regarding Brown's conduct. Critically, Brown does not dispute that Midgley, who was the one who decided to release Brown, perceived Brown as unfit for duty. *See Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004) (quotation omitted) (holding that in a pretext analysis, "[t]he relevant inquiry is not whether [the defendant's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs.").

him by affording him fewer opportunities for training and that it had disciplined him in a disparate manner. He also claims that Lowe's subjected him to "serious discipline by not following policy and skipping steps to put Mr. Brown on a final warning."[10]

As for retaliation, he asserts that, after he complained about a coworker using the "N" word, Lowe's altered the terms or conditions of his employment. Similarly, in his 2010 Charge of Discrimination, he complains that he was subject to "a lack of proper training, a change in assignments, terms and conditions of my employment [sic], unjust discipline and promotions which [have] adversely affected my wages."[11] He goes on to state in the 2010 Charge that "[t]his employer did not follow their policy of giving a final written warning after several warnings as this was the first warning I have received. Others who have been placed on a final written warning have been treated differently than I have. Others have been allowed to transfer, attend classes for promotions as well as been made to feel that everything would be okay once they are [sic] of their final warning status. However I am threatened with losing my employment on a daily basis. I believe I have been discriminated because of my race as well as retaliated against for complaining of discrimination."[12]

Brown, however, has not set forth any specific facts regarding any altered terms or

---

[10] *See* Docket No. 18, Mem. in Opp'n at 18. As discussed above, however, Lowe's has provided evidence that Brown "badly misreads" Lowe's human resources policy when making this argument. The plain language of the policy in question demonstrates that Lowe's acted in full compliance with its policy. Indeed, Lowe's gave Brown the benefit of the doubt by not, as it could have done, firing Brown and instead only giving him a Final Notice. *See* Docket No. 21, Reply Mem. at 2-3, 5 n.1; *see also* Ex. 7, attached to Docket No. 21.

[11] *See* March 18, 2000 Charge of Discrimination, Docket No. 15, Exhibit 26.

[12] *Id.*

conditions of employment, any promotion that he was denied, or any facts to suggest that Lowe's failed to follow its own policy in a discriminatory manner or that it treated Brown differently because of his race–or differently at all. He similarly fails to set forth any facts concerning any retaliatory conduct by Lowe's (aside from the alleged retaliatory termination) after Brown complained about a co-worker's use of the "N" word.[13]

Brown simply relies on his own subjective speculation that he has been discriminated against based on his race and retaliated against based on his complaint about a coworker's use of the "N" word. At this point in the litigation, the nonmovant must go beyond the allegations and denials of her pleadings and provide admissible evidence, which the court views in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Although the nonmoving party need not present evidence "in a form that would be admissible at trial," *Celotex*, 477 U.S. at 324, "the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *Conaway v. Smith,* 853 F.2d 789, 793 (10th Cir.1988).

---

[13] To the extent that Brown claims that his January 8, 2010 "Final Notice," issued after the altercation with Williams, was in retaliation for his report of the racial remark, this argument fails. First, the Notice was simply a continuation of a discipline process that began before Brown ever engaged in protected activity. Under Tenth Circuit law, there is no discrimination where the employer "simply completed the disciplinary process already set in motion" before the plaintiff engaged in protected activity. *See Morgan v. Hilti, Inc*., 108 F.3d 1319, 1324-25 (10th Cir. 1997). Moreover, Williams, a white woman, was also disciplined. Such equal treatment does not support an inference of retaliation. While Brown asserts that this was Williams' *second* Final Notice, he offers no evidence to support such an allegation–and Lowe's has submitted an affidavit to the contrary.

To the extent Brown has attempted to assert claims for discrimination and retaliation separate and apart from his jurisdictionally barred termination claims, he has failed to offer any admissible evidence to create a genuine issue of disputed fact on any such claims, and therefore, the claims must be dismissed.

## III. HARASSMENT

Lower's contends that Brown cannot establish a prima facie hostile work environment claim (based on race) because he has identified only one, isolated instance of racial conduct. To establish actionable harassment, Brown must set forth facts demonstrating that "'under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and (2) the harassment was racial or stemmed from racial animus.'" *Witt v. Roadway Exp.*, 136 F.3d 1424, 1432 (10th Cir. 1998) (quotation omitted).

Brown cannot prevail on his claim merely by establishing a pattern of "general harassment;" rather, the harassment must stem from a racial motive. *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). Further, Brown must do more than identify "'a few isolated incidents of racial enmity.'" *Id*. at 551 (quotation omitted). "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id.*.; *see also Witt*, 136 at 1432 (holding in favor of employer where claim involved repeated use of N-word and threats issued on "Klu Klux Klan" letterhead); *Shaw v. Tulsa Dynaspan Arrow Concrete*, 2011 WL 263205, at *2 (10th Cir. Jan. 28, 2011) (despite references to "N" word, racially offensive conduct did not permeate plaintiff's work place, and, therefore, hostile work environment claim was subject to summary judgment dismissal); *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)

13

(holding that two racially offensive remarks was insufficient to establish a hostile work environment); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (holding that "'mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." (quotation omitted)).

In this case, Brown's harassment claim is based on two contentions: (1) Brown's sense that a group of long-time employees did not like him; and (2) a single incident in which race was even mentioned – when Dawes mentioned that an African-American friend of his occasionally used the "N" word.[14] Even assuming that these contentions are true, neither of these allegations amounts to a prima facie case of harassment. First, while Brown took offense at a great many encounters with his co-employees, none of these incidents, except for Dawes' comment, was racial in nature. *See Bolden*, 43 F.3d at 551 ("general harassment" is not actionable). Consequently, Brown's conflicts with the "old guard," no matter how many times Brown became embroiled with this "clique," do not support a claim for racial harassment. Therefore, Brown's claim for racial harassment is reduced to the single, isolated remark by Dawes. This solitary, one-time remark, as a matter of law, is insufficient to defeat summary judgment.[15]

---

[14] Brown claims that his claim is based on more than one racial epithet. He contends that "as soon as he heard Midgley and Dawes participate in this conversation, he understood these comments to explain why the local management had passed him over for training opportunities, why it had given him unreasonable job assignments and why the local management had allowed subordinate employees to determine his work schedule." *See* Docket No. 18, Mem. in Opp'n at 30, 40. As explained above, however, Brown, has not set forth any evidence that he was given any unreasonable job assignment, that he had been passed over for training opportunities, or that subordinate employees had decided his work schedule.

[15] In *Bolden*, the plaintiff alleged 20 incidents of harassment, including racial comments which the court described as "blatant racial harassment." 43 F.3d at 549, 551. These comments included a warning to the plaintiff that "you better be careful because we know people in [the]

In sum, Brown cannot show that he was subjected to harassment based on the non-racial conduct he alleges the "old guard" engaged in, or based on the isolated Dawes incident. Thus, the court must grant summary judgment on this claim.

Moreover, even if Brown had created a disputed issue regarding his claim for actionable harassment, Lowe's is nevertheless entitled to summary judgment because Mr. Brown has failed to dispute whether Lowe's took action "'reasonably calculated to end harassment.'" *See Duncan v. Manager, Dept. of Safety, City & County of Denver*, 397 F.3d 1300, 1310 (10th Cir. 2005) (citation omitted). "An employer is absolved of liability for acts of harassment by its employees if it undertakes remedial and preventative action 'reasonably calculated to end the harassment.'" *Id.* at 1310 (quotation omitted). "If the employer's response ends the harassment by the employee in question, [courts] presume that the remedial action was sufficient." *Id*.

Brown has not disputed that Lowe's remedial and preventative action in fact ended Brown's alleged harassment. As soon as Lowe's was aware of the Dawes incident, there is no dispute that it promptly investigated the matter. Lowe's then devised a response "reasonably calculated to end the harassment" by disciplining Dawes and threatening him with termination. Because Brown has not suggested that Lowe's response failed to ended the alleged harassment, Brown cannot establish Lowe's liability and thus, the court must dismiss the harassment claim.

---

Ku Klux Klan," and repeated use of the word "n-----." *Id*. The *Bolden* court, however, found that the plaintiff's claim of racial harassment was properly dismissed on summary judgment because it was not sufficiently severe or pervasive.

In *Witt*, a supervisor stated, "F--- that n-----, he don't have no rights." On another occasion the supervisor telephoned the employee's home hostilely demanding, "Well, where's this n----- at?" 136 F.3d at 1429. Despite the severity of these remarks, the court found that the comments were not sufficiently pervasive or severe to create a hostile work environment as a matter of law. *See id*.

15

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Lowe's Motion for Summary Judgment [Docket No. 14] is GRANTED, and Mr. Brown's claims for discrimination, retaliation, and harassment are DISMISSED with prejudice. The Clerk of Court is directed to enter judgment in favor of Lowe's HIW, Inc. and against George W. Brown III.

DATED this 30th day of September, 2014.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge